THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LOREY SMITH WEAVER** <br> 2405 Old Ft. Hills Drive <br> Fort Washington, MD 20744 <br><br> **Plaintiff,** <br> v. <br><br> **DISTRICT OF COLUMBIA** <br><br> <u>Serve:</u> <br> **Mayor Muriel Bowser** <br> **John A. Wilson Building** <br> **1350 Pennsylvania Avenue, N.W.** <br> **Washington, D.C. 20004** <br><br> **Office of the Attorney General** <br> **400 6th Street, N.W.** <br> **Washington, D.C. 20001** <br><br> **Defendant.** | **Civil Action No.** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Lorey Smith Weaver, by and through the undersigned counsel and submits this complaint pursuant to the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 701, *et seq*. ("Rehabilitation Act"). Plaintiff asserts claims of 1) Failure to accommodate based on Plaintiff's disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 701, *et seq*., and 2) retaliation in violation of the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 701, *et seq*.

## JURISDICTION AND VENUE

1. Federal question jurisdiction is conferred on this Honorable Court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a)(4), and the Rehab Act, 29 U.S.C § 701, *et seq*.

2. All actions and the events giving rise to Plaintiff's claims occurred within the jurisdiction of the United States District Court for District of Columbia. Consequently, venue is proper in this Court under 28 U.S.C. § 1391 (b).

3. The Court has subject-matter jurisdiction pursuant to 29 U.S.C. § 794 (a), as this matter involves a civil action by an aggrieved person under the Rehabilitation Act.

4. The Court may properly maintain personal jurisdiction over Defendant because Defendant is the government of the District of Columbia.

## PARTIES

5. Plaintiff, Lorey Smith Weaver ("Plaintiff" or "Ms. Weaver"), was at all times relevant herein a non-judicial employee of the Superior Court of the District of Columbia, working as Deputy Clerk in the Domestic Relations Branch of the Family Court Division.

6. Defendant, District of Columbia, is a municipal government operating under the D.C. Self Government Act.

7. The Superior Court of the District of Columbia ("D.C. Superior Court") is a *non sui juris* agency of the District of Columbia government.

8. On information and belief, Defendant receives funding from the federal government.

9. On information and belief, D.C. Superior Court receives funding from the federal government.

10. Defendant is a program or activity as defined by 29 U.S.C. § 794 (b). Plaintiff asserts *respondeat superior* where appropriate.

11. Plaintiff is a resident of the State of Maryland.

12. Plaintiff is a qualified individual with a disability as defined by 29 U.S.C § 705 (20) and 29 U.S.C. § 794 (a).

13. As a non-judicial employee of the District of Columbia Courts, Plaintiff was treated as an employee of the federal government for limited purposes, including compensation rates and benefits.

## FACTS

14. Plaintiff began her employment with the D.C. Superior Court on or about June 1993.

15. Plaintiff began working with the Domestic Relations Branch of D.C. Superior Court on or about April 2001 and her most recent position was as a Deputy Clerk III of the Family Court Division of the Domestic Relations Branch.

16. On or about July 4, 2016, Plaintiff awoke from her sleep unable to move her right hand and immediately went to a local emergency room, where she was given pain medication and told to follow-up with her primary care doctor if she continued to feel pain.

17. On or about July 11, 2016, Plaintiff sought the services of an orthopedic specialist, Dr. Alfred Phelps, referred by her primary care physician.

18. Plaintiff was immediately required to wear a cast on her right wrist, which she wore for approximately six weeks, and provided with a doctor's note that required Plaintiff to have modified work activity for approximately one month, including requiring Plaintiff to only use her keyboard and mouse occasionally but no more that 15 minutes per hour, using repetitive hand motions for no more than 15 minutes hour, and also restrictions on lifting heavy objects and climbing ladders.

19. On or about July 12, 2016, still feeling extreme pain in her right wrist, Plaintiff contacted her then branch supervisor, Thomas Whittaker, to inform him of her condition and provided her doctor's note to her employer.

20. On or about August 27, 2016, an MRI of her right wrist revealed that Plaintiff had a "Complete tear of the volar aspect of the distal radial ulnar joint with dorsal subluxation of the distal ulna," as well as a "volar subluxation of the extensor carpi ulnaris tendon."

21. Beginning on or about the end of August 2016, Plaintiff used annual and sick leave to take time away from work intermittently until the end of 2016.

22. Prior to coming back to work on or about February 2017, Plaintiff requested an accommodation to her workstation so that she would have the proper ergonomic setup, but the D.C. Superior Court did not provide an ergonomic workstation until on or about April 23, 2017.

23. On or about April 27, 2017, Plaintiff began feeling extreme pain in her left wrist, which was eventually diagnosed as ligament and tendon damage caused by working on a poor ergonomic desk at work.

24. On or about June 2, 2017, Plaintiff's primary care physician, Dr. Deborah Thompson, provided a doctor's note stating that Plaintiff's "job does aggravate her symptoms due to the repetitive nature of her work."

25. Plaintiff began to inquire about being reassigned to another employment position within the D.C. Superior Court as an accommodation to her disability on or about April 2019.

26. When Plaintiff initially contacted H. Clifton Grandy, the American with Disabilities Act (ADA) Coordinator, about being reassigned to another employment position as an accommodation for her disability, Mr. Grandy did not respond to Plaintiff, even after repeated emails and phone calls.

27. Consequently, Plaintiff contacted human resources, as well as the Director of the Family Court Division, Avrom Sickel, to inquire about receiving a reassignment to another position within the D.C. Superior Court as an accommodation.

28. Plaintiff was told there were no vacancies available that were suitable for her, considering her medical conditions.

29. Upon information and belief, there were positions available within the D.C. Superior Court that would have allowed Plaintiff to do less typing and less repetitive wrist movements, which would comply with her health provider's restrictions.

30. On or about May 29, 2019, in response to requests for accommodations made by Plaintiff on May 21, 2019, Mr. Grandy sent an email to Plaintiff denying her requests for accommodations.

31. In said email, Mr. Grandy claimed that the "Parentage and Support Branch" could not accommodate Ms. Weaver by removing her from the counter in the Finance Office and the customer service window, restricting Ms. Weaver's work on computers to no more than 30 minutes followed 10-minute breaks, and "light duty."

32. Mr. Grandy's email erroneously stated that Ms. Weaver worked in the Parentage and Support Branch, which she did not, and Ms. Weaver did not ask to be removed from working in the Finance Office.

33. Ms. Weaver also did not request a complete removal from working at the customer service window, just an allowance for 10-minute breaks after each 30-minute interval of work at the customer service window.

34. On or about June 12, 2019, Mr. Grandy sent another email to Ms. Weaver denying her requests for accommodations claiming they would either "impose undue hardship upon

the operations of the Family Court Operations Division or would be ineffective in enabling you to perform the essential functions of your job as a Deputy Clerk."

35. Mr. Grandy concluded his email by stating that he further determined "that the Courts have exhausted its effort to accommodate the set of disabilities and limitations for which you have requested accommodations."

36. Mr. Grandy never explained to Ms. Weaver how her requested accommodations would impose an undue hardship upon the Family Court Operations Division, nor did he explain how Ms. Weaver's requests for accommodation would not allow her to perform the essential duties of her position.

37. On or about July 3, 2019, Ms. Weaver's orthopedic physician at the time, Dr. Ricardo Pyfrom, provided her with a doctor's note to give to her employer that contained certain restrictions, including that Ms. Weaver must work in wrist braces, that she limit data entry work to 45 minutes each hour with a break of 15 minutes, she could not lift more than 5 pounds with either hand and avoid handling case files that weighed over 5 pounds, and she could work at the service window but could not lift or handle items over 5 pounds.

38. These restrictions on Ms. Weaver's ability to work continued through the end of her employment with the D.C. Superior Court.

39. On March 11, 2020, the Mayor of the District of Columbia declared a state of emergency due to the Covid-19 pandemic.

40. Due to the state of emergency, the operations of the D.C. Superior Court were altered, and many employees of the D.C. Superior Court were placed on administrative leave or allowed to work from home.

41. On or about May 1, 2020, Mr. Grandy sent an email to Ms. Weaver informing her that D.C. Superior Court denied her request for an ergonomic workstation at her home.

42. On or about May 26, 2020, during the height of the Covid-19 pandemic, Ms. Weaver received a "Report to Work Notification" from Derrick Monroe, Branch Chief of the Domestic Relations Branch, requiring Ms. Weaver to report to work in person twice a week for no more than six hours per day.

43. In the "Report to Work Notification," Ms. Weaver was assigned to sort and process mail at the Court.

44. When Ms. Weaver returned to work, mail had piled up since March 18, 2020, requiring Ms. Weaver to sort and process over two months of mail by herself.

45. Along with sorting and processing mail, Ms. Weaver was required to complete other administrative duties that could only be done in the office, including but not limited to updating the Court view system docket, mailing documents to parties, and processing online requests for certified copies of documents.

46. Ms. Weaver did all of these tasks by herself when normally completing these tasks would have required two clerks to properly complete.

47. On or about September 7, 2020, Ms. Weaver was required to work three days a week for no more than six hours per day.

48. On or about December 29, 2020, Ms. Weaver's orthopedic physician, Dr. Pyfrom, provided Ms. Weaver with a "disability certificate."

49. This disability certificate stated that Ms. Weaver was under Dr. Pyfrom's care and would be able to return to work on January 14, 2021.

50. Dr. Pyfrom also recommended that Ms. Weaver be transferred to a position with "less hand-wrist repetitive movements."

51. On or about February 4, 2021, Ms. Weaver contacted Zabrina Dempson, clerk of the D.C. Superior Court, inquiring about reassignment to another employment position as an accommodation for her disability.

52. Ms. Dempson responded to Ms. Weaver by including Mr. Grandy on the email thread to have him engage in the interactive process with Ms. Weaver for to discuss reassignment as an accommodation.

53. On or about February 4, 2021, Mr. Grandy sent an email to Ms. Weaver stating that there were no open positions within the Family Court Operations Division that met Ms. Weaver's medical restrictions.

54. On or about February 6, 2021, Ms. Weaver was required to work eight hours per day, three days per week.

55. On or about May 26, 2021, Mr. Grandy and the Acting Deputy Director of the Human Resources Division of the D.C. Superior Court, Pamela Hunter, contacted Ms. Weaver by phone and discussed a position available in the Court Social Services Division.

56. Ms. Weaver declined this position because the position's duties included potentially breaking up fights and altercations between juveniles, which Ms. Weaver believed could aggravate the condition of her wrists.

57. Ms. Weaver suggested transfers to call centers where there had been position openings, and the work would not require the same repetitive wrist movements that had contributed to the deterioration of the ligaments and tendons in Ms. Weaver's wrists, based on the prior medical restrictions provided by Dr. Pyfrom.

58. Upon information and belief, Mr. Grandy interfered with Ms. Weaver's ability to receive a reassignment to another position as an accommodation because there were available positions that Ms. Weaver was qualified for and would comply with her medical restrictions.

59. On or about July 20, 2021, Ms. Weaver received an email from Derrick Monroe informing her that effective July 26, 2021, Ms. Weaver would be required to work five days a week, eight hours a day.

60. Approximately a half an hour later, Mr. Grandy emailed Ms. Weaver to further confirm that the D.C. Superior Court had reached the "Phase 2" enhancement of on-site work to begin on July 26, 2021, that Ms. Weaver's three-day week schedule would end, and she would have to work the schedule provided by her supervisor.

61. In this email, Mr. Grandy stated that if Ms. Weaver is requesting "any accommodations (other than your on-going ergonomic equipment and the upcoming ergonomic assessment at your courthouse cubicle) please let me know so we can start an ADA interactive process."

62. On or about July 22, 2021, Ms. Weaver emailed Mr. Grandy to inquire about receiving a position reassignment as an accommodation for her disability in response to the December 29, 2020 disability certificate she provided several months prior.

63. On the same day, Mr. Grandy responded to Ms. Weaver by stating that Ms. Weaver's reduced work schedule and restructured job duties during the pandemic made the December 29, 2020 disability certificate "stale."

64. Additionally, Mr. Grandy stated that Ms. Weaver rejected the job position at the Court Social Services Division and refused to go on a personal tour of the Court Social Services operation.

65. Lastly, Mr. Grandy claimed positions at the D.C. Courts had been monitored and there were no jobs at Ms. Weaver's grade level that would also comply with her medical restrictions, so Mr. Grandy declared that Ms. Weaver's "request for an ADA placement is closed and monitoring for an ADA job placement will cease."

66. An attachment to Mr. Grandy's July 22, 2021 email was titled "POLICY NO. 0625 MEDICAL SEPARATION AND ADMINISTRATIVE INSTRUCTIONS."

67. On or about July 26, 2021, Ms. Weaver's orthopedic physician, Dr. Pyfrom, provided a "disability certificate," which provided restrictions on Ms. Weaver's work including continued light duty restrictions, requiring wrist braces for support, avoid repetitive use of either hand, and take breaks after 30 minutes of repetitive work.

68. Additionally, Dr. Pyfrom recommended transfer to another job position with less repetitive hand and wrist movements.

69. On August 13, 2021, Mr. Grandy issued a Notice of Intent to Medically Separate to Ms. Weaver indicating his recommendation that Ms. Weaver be terminated from her position as a Deputy Clerk.

70. On August 26, 2021, Ms. Weaver provided her written response to Mr. Grandy's August 13th notice.

71. On September 1, 2021, Mr. Grandy responded to Ms. Weaver's August 26th letter, reasserting the information provided in his August 13th notice.

72. On September 21, 2021, a final Notice of Determination to Separate for Medical Reasons was issued by Zabrina W. Dempson, which stated that effective close of business September 24, 2021, Ms. Weaver's appointment as Deputy Clerk III would end, and then Ms. Weaver would be placed on non-duty status with pay for 10 days, concluding October 8, 2021, the effective date of Ms. Weaver's termination from the D.C. Superior Court.

73. On or about October 12, 2021, Ms. Weaver contacted Tiffany Adams-Moore, the D.C. Courts Equal Employment Opportunity ("EEO") to begin the EEO complaint process.

74. On or about January 13, 2022, Ms. Weaver filed a formal complaint alleging disability discrimination for failure to accommodate and discriminatory retaliation.

75. On March 15, 2022, Ms. Weaver received a Reasonable Cause Determination letter from Tiffany Adams-Moore affirming the decision to medically separate Ms. Weaver from her employment with D.C. Superior Court.

76. On March 28, 2022, Ms. Weaver filed a Request for Review of the Reasonable Cause Determination, through counsel, by sending the request to Cheryl R. Bailey, the Acting Executive Officer of the District of Columbia Courts.

77. On April 18, 2022, Cheryl Bailey sent her response to the Request for Review, in which she affirmed the decision by Tiffany Adams-Moore.

78. On or about July 12, 2022, Ms. Weaver contacted the Washington, D.C. field office of the Equal Employment Opportunity Commission to file a complaint against the District of Columbia and D.C. Superior Court for disability discrimination under the American with Disabilities Act.

79. On July 18, 2022, the EEOC issued a dismissal and notice of rights letter to Ms. Weaver, which informed her that she had 90 days from her receipt of the notice to file a lawsuit; the letter is attached as Exhibit 1.

80. There is no administrative exhaustion requirement for the Rehabilitation Act.

81. Ms. Weaver worked for the D.C. Superior Court for 28 total years, did not have any disciplinary complaints during her entire employment with D.C. Superior Court.

82. Ms. Weaver's performance evaluation score for the 2019 – 2020 grading period was 3.67 out of 5, which was considered "commendable."

83. Ms. Weaver's performance evaluation score for the 2020 – 2021 grading period was 3.95 out of 5, which was considered "commendable."

84. Since her termination, Ms. Weaver has struggled to regain full-time employment.

## COUNT I

### Failure to Accommodate in Violation of the Rehabilitation Act

85. Plaintiff adopts and incorporates all allegations contained in each of the foregoing paragraphs as if fully restated herein.

86. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…."

87. Plaintiff has a disability as she has a physical impairment that substantially limits one or more major life activities, in this case lifting objects like case files and generally working in her former position as Deputy Clerk III.

88. Plaintiff is a qualified individual as she can perform the essential functions of her employment position with reasonable accommodations, despite her disability.

89. The D.C. Superior Court management was aware of Plaintiff's disability.

90. The D.C. Superior Court failed to timely provide ergonomic accommodations to Plaintiff, which caused an exacerbation of Plaintiff's impairment to her right hand and caused additional impairment to Plaintiff's left hand.

91. For approximately two years, Plaintiff contacted various members of the D.C. Superior Court's management to request reassignment to other employment positions as an accommodation for her disability.

92. The D.C. Superior Court denied Plaintiff's request for reassignment to call center positions, even though, upon information and belief, there were available employment opportunities in call centers that Plaintiff would have been qualified for and would have complied with Plaintiff's doctor's medical restrictions.

93. The D.C. Superior Court only offered an employment position with the Court Social Services Division that would have been an ineffective accommodation since the position would have put her at risk of aggravating her disability.

94. As a proximate cause of Defendant's discrimination against Plaintiff on the basis of her disability, Plaintiff has suffered and continues to suffer substantial losses, including physical pain and suffering, mental distress, the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

## COUNT II

### Retaliation in Violation of the Rehabilitation Act

95. Plaintiff adopts and incorporates all allegations contained in each of the foregoing paragraphs as if fully restated herein.

96. Plaintiff engaged in protected activity in the form of repeated requests for reassignment as an accommodation for her disability.

97. On July 22, 2021, Plaintiff requested reassignment as an accommodation by sending an email to the ADA Coordinator, H. Clifton Grandy.

98. Mr. Grandy responded on July 22, 2021, by denying her request for reassignment and stating that the D.C. Superior Court would no longer monitor for reassignment opportunities for Plaintiff.

99. Additionally, attached to his July 22, 2021 email was a document describing the D.C. Superior Court's policy regarding medical separation.

100. On July 26, 2021, Plaintiff's doctor issued a disability certificate recommending that Plaintiff be reassigned to another position, which Plaintiff provided to Mr. Grandy on or about July 27, 2021.

101. On August 13, 2021, Mr. Grandy issued the Notice of Intent to Medically Separate to Ms. Weaver indicating his recommendation that Ms. Weaver be terminated from her position as a Deputy Clerk.

102. On September 21, 2021, a final Notice of Determination to Separate for Medical Reasons was issued by Zabrina W. Dempson, which made Plaintiff's termination effective on October 8, 2021.

103. Defendant's stated reason for terminating Plaintiff was that no reasonable accommodation that would enable Plaintiff to perform the essential functions of the position and reassignment is not an option or Plaintiff cannot be accommodated without imposing undue hardship on the court.

104. Defendant's stated reason for termination was pretext for terminating Plaintiff for engaging in a protected activity of requesting an accommodation because, upon information and belief, other open employment positions existed which Plaintiff would have been qualified for and would have complied with her medical restrictions.

105. The retaliatory termination suffered by Plaintiff would dissuade a reasonable employee from requesting accommodations for a disability from their employer.

106. As a proximate cause of Defendant's retaliation against Plaintiff on the basis of her engaging in a protected activity, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court grant the following relief:

A. Entry of judgment in favor of Plaintiff against Defendant;

B. Back pay;

C. Front pay;

D. Compensatory and punitive damages pursuant to 42 U.S.C. § 1981a, and not less than $300,000;

E. Attorneys' fees and costs; and

F. Other such relief as may be appropriate to effectuate the purposes of the Rehabilitation Act.

Respectfully submitted,

By: /s/ Jason A. Grant
Jason A. Grant #1005856
GO Law Group, PLLC
1775 Eye Street, N.W., Suite 1150
Washington, DC 20006
Telephone: 202-587-5680
Fax: 202-318-9161
jagrant@thegolawgroup.com
*Counsel for Plaintiff*